UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-11132-MER |
| LSI RETAIL II, LLC | ) | Chapter 11 |
| EIN: 20-0741627 | ) | |
|   Debtor | ) | |
| ———————————————————— | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 13-11135-MER |
| CONIFER TOWN CENTER, LLC | ) | Chapter 11 |
| EIN: 20-1517101 | ) | |
|   Debtor | ) | |
| ———————————————————— | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 13-11167-MER |
| LAND SECURITIES INVESTORS, LTD., | ) | Chapter 11 |
| EIN: 84-1021913 | ) | |
|   Debtor | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| | ) | **UNDER CASE NO. 13-11132-MER** |

**JOINT PLAN OF REORGANIZATION**

**DATED MAY 24, 2013**

     LSI Retail II, LLC ("LSI Retail"), Conifer Town Center, LLC ("CTC"), and Land Securities Investors, LTD ("LSI")(collectively the "Debtors") Debtors and Debtors-in-Possession hereby propose the following Joint Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code.

# ARTICLE I

## INTRODUCTION

LSI Retail a Colorado limited liability company is the owner and operator of a retail shopping center known as Roxborough Market Place located at 8351-8361 Rampart Range Road, Littleton, Colorado. The center includes a number of local and national tenants. LSI Retail also owns a 1.2 acre parcel of undeveloped land located on Waterton Canyon Road, Douglas County, Colorado.

CTC a Colorado limited liability company is the owner and operator of a retail shopping center and development pad sites located at 27175 Main street, Conifer, Colorado.

LSI is a Colorado limited partnership that owns and manages several parcels of real property and interests in companies that own real property. The property owned by LSI is generally not improved, with limited exceptions. The companies that are owned in part by LSI do own improved property that generates income. LSI is generally in the business of developing real property at a more wholesale level and then selling it to builders who acquire it for further development into residential and commercial property.

The three Debtors' cases are jointly administered but are not substantively consolidated. They are three separate cases in Chapter 11 of the Bankruptcy Code. This Plan is a joint Plan and must be separately approved in all three cases. It is combined as a joint Plan due to the similarity of creditors and the impact that treatment of creditors in one case will have on creditors in the other case. In many cases there are cross guarantees between the three Debtors.

This Plan provides for the reorganization of the Debtors under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtors shall restructure their debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtors, their operations, an explanation of this Plan, and a description of the Debtors' financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

# ARTICLE II

## DEFINITIONS

2.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

2.02 - <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.03 - <u>Allowed Secured Claim</u> shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtors' interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 - <u>Avoidance Actions</u> means each Debtors' estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtors to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise

subject to equitable subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07- Class 1.1-1.6, 2.1-2.6, and 3.1-3.11 Claims and Interests shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.09 - Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtors' respective Chapter 11 cases are pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - Debtors shall mean the Debtors who are proposing this Chapter 11 Plan.

2.12 - Disclosure Statement shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.13 - Disputed Claim means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtors' schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

2.14 - Effective Date of the Plan shall mean the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.15 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.16 - <u>Gross Revenue</u> shall mean the gross revenue actually received by a particular Debtor from the operation of its business, less any taxes collected.

2.17 - <u>Interest</u> shall mean any member or partner interest or any other instrument evidencing any ownership interest in the Debtors and any option, warrant or right of any nature, contractual or otherwise, to acquire a member or other ownership interest in the Debtors existing as of the Petition Date.

2.18 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.19 - <u>Petition Date</u> shall mean the date on which the voluntary Petitions were filed by the Debtors on January 29, 2013.

2.20 - <u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.21 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.22 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.23 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

2.24 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.25 - <u>Tax Claim</u> means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.26 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.27 - <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE III

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

**LSI Retail**

Class 1.1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 1.2 – The Allowed Secured  Claim held by 3NP secured by a first deed of trust encumbering the 1.2 acre undeveloped parcel on Waterton Canyon Road, Douglas County, Colorado.

Class 1.3.1 – The Allowed Secured Claim held by Douglas County or assignee (vacant parcel taxes).

Class 1.3.2 – The Allowed Secured Claim held by Douglas County or assignee (Roxborough Market taxes).

Class 1.4 – The Allowed Secured Claim held by State Farm Life Insurance Co.

<u>Class 1.5</u> – The Allowed Claims held by unsecured creditors, other than those classified in Classes 1.6.1-1.6.6.

<u>Class 1.6.1</u> – The Allowed unsecured claim held by Mike's Building Maintenance, LLC.

<u>Class 1.6.2</u> – The Allowed unsecured claim held by Colorado Mechanical Systems Inc.

<u>Class 1.6.3</u> – The Allowed unsecured claim held by Colorado Lighting Inc.

<u>Class 1.6.4</u> – The Allowed unsecured claim held by Always Green LLC.

<u>Class 1.6.5</u> – The Allowed unsecured claim held by Schindler Elevator Corp.

<u>Class 1.6.6</u> – The Allowed unsecured claim held by Liquid Environmental Solutions.

<u>Class 1.7</u> – The Interests held by members.


## **CTC**

<u>Class 2.1</u> – All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

<u>Class 2.2</u> – The Allowed Secured Claim held by the Jefferson County Treasurer's office or assigns.

<u>Class 2.3.1</u> - The Allowed Secured Claim held by Mountain Rising Development, LLC secured by the CTC shopping center property (Approximately $3,425,000).

<u>Class 2.3.2</u> - The Allowed Secured Claim held by Mountain Rising Development, LLC secured by the CTC shopping center property (Approximately $2,248,982.78).

<u>Class 2.4</u> – The Allowed Claims held by unsecured creditors, other than those classified in Classes 2.5.1-2.5.6.

<u>Class 2.5.1</u> – The Allowed unsecured claim held by Mikes Building Maintenance, LLC.

<u>Class 2.5.2</u> – The Allowed unsecured claim held by Century Link.

<u>Class 2.5.3</u> – The Allowed unsecured claim held by ADT/Tyco Security.

<u>Class 2.5.4</u> – The Allowed unsecured claim held by Systems Group.

<u>Class 2.5.5</u> – The Allowed unsecured claim held by Thyssenkrup Elevator Corp.

Class 2.5.6 – The Allowed unsecured claim held by Liquid Environmental Solutions.

Class 2.6 – The Interests held by members.

**LSI**

Class 3.1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 3.2 – The Allowed Secured Claim held by 3NP LLC.

Class 3.3 – The Allowed Secured Claim held by Alden Financial Inc.

Class 3.4– The Allowed Secured Claim held by Douglas County Treasurer.

Class 3.5.1 - The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.2 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.3 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.4 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.6 – The Allowed Secured Claim held by Jefferson County Treasurer.

Class 3.7 – The Allowed Secured Claim held by Larimer County Treasurer.

Class 3.8 – The Allowed Secured Claim held by TIC Lending, LLC.

Class 3.9 – The Allowed Secured Claim held by UMB Bank.

Class 3.10– The Allowed Unsecured Claims held by unsecured creditors.

Class 3.11– The Interests by general and limited partners.

## ARTICLE IV

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtors covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

4.1 - The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed.

4.2 - The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan or in monthly payments for a period that does not exceed five years from the Petition Date with interest at the appropriate rate set by applicable statute. The Debtors shall have the option to accelerate payments without penalty. The first monthly payment shall be due on the last day of the first full month following the Effective Dates.

4.3 - The Debtors will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE V

## SPECIFICATION AND TREATMENT OF CLASS 1.1, 2.1, AND 3.1 CLAIMS

5.1 - Allowed Class 1.1, 2.1, and 3.1 Priority Claims shall be paid in full on the Effective Date. The Class 1.1, 2.1, and 3.1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. The Debtors do not expect that any creditors will hold claims in these classes.

## ARTICLE VI

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

**LSI Retail**

6.1 – **3NP.** The Class 1.2 Secured Claim consists of the Allowed Secured Claim held by 3NP ("3NP") secured by a first deed of trust encumbering a 1.2 acre parcel on Waterton Canyon Road, Douglas County, Colorado. The Class 1.2 Secured Claim is impaired by this Plan. The Class 1.2 Secured Claim will be treated and paid as follows:

     a.     Pursuant to 11 U.S.C. § 506, the Class 1.2 Claim is secured up to the value of the collateral for the Class 1.2 Claim and unsecured for the balance. The Class 1.2 claim shall be fixed in an amount that is either: (i) the amount of the claim; (ii) determined by the Court based on the value of the collateral for the Class 1.2 claim as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

     b.     The Class 1.2 claim will bear interest at the rate of: (i) 3% per annum commencing on the Effective Date of the Plan; or (ii) if Class 1.2 objects to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Class 1.2 claimant and the Debtor.

     c.     The monthly payment of the Class 1.2 claim shall be interest only until the maturity date which will be on the seven year anniversary of the Effective Date of the Plan.

d.      The Class 1.2 claimant will retain all liens that secured its Claim as of the Petition Date.

e.  In the event that any of the collateral for the Class 1.2 claim is sold during the seven year term of the Plan, the net proceeds of sale shall be paid 85% to the Class 1.2 claimant until its claim is paid and 15% will be retained by the Debtor until the Class 1.2 claim is paid.

**6.2 – Douglas County Treasurer.**  The Class 1.3.1 and 1.3.2 Secured Claims consist of the Allowed Secured Claims held by the Douglas County Treasurer or assigns and secured by real property owned by LSI Retail.  The Class 1.3.1 and 1.3.2  Secured Claims are impaired by this Plan and shall be treated as follows.

a.      The Class 1.3.1 and 1.3.2  claims shall be fixed in an amount that is equal to the amount due on each claim as of the Confirmation Date.

b.      The Class 1.3.1 and 1.3.2 claims will bear interest at the applicable statutory rate.

c.      The monthly payment of the Class 1.3.1 and 1.3.2 claims shall be calculated based upon an amortization period equal to 60 months less the number of months from the Petition Date until the Confirmation Date, and paid in equal monthly installments over the resulting term.  The first monthly payment shall be due on the last day of the first full month following the Effective Date of the Plan.  Notwithstanding, the amortized payment plan, the Allowed Secured tax claim will be paid in full upon sale of any parcel of real property that secures such a claim.

d.      The Class 1.3.1 and 1.3.2 claimant will retain all liens that secured its Claim as of the Petition Date.

**6.3 – State Farm Life Insurance Company (State Farm).**  The Class 1.4 Secured Claim consists of the Allowed Secured Claim held by State Farm Life Insurance Company and secured by the Roxborough Market property in Douglas County, Colorado.  The Class 1.4 Secured Claim is impaired by this Plan.  The Class 1.4 Secured Claim will be treated and paid as follows:

a.      Pursuant to 11 U.S.C. § 506, the Class 1.4 Claim is secured up to the value of the collateral for the Class 1.4 Claim and unsecured for the balance.

11

The Class 1.4 claim shall be fixed in an amount that is either: (i) $9,500,000; (ii) determined by the Court based on the value of the collateral for the Class 1.4 claim as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

      b.     The Class 1.4 claim will bear interest at the rate of: (i) 3% per annum commencing on the Effective Date of the Plan; or (ii) if Class 1.4 objects to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Class 1.4 claimant and the Debtor.

      c.     The monthly payment of the Class 1.4 claim shall be calculated based upon a twenty five (25) year amortization of the Claim and paid in equal monthly installments or as may be agreed to by the parties or set by the Court.  The first monthly payment shall be due on the last day of the first full month following the Effective Date. Notwithstanding the amortization schedule, the entire amount due with respect to the Class 1.4 claim shall be due and payable on the seven (7) year anniversary of the Effective Date of the Plan.

      d.     The Class 1.4 claimant will retain all liens that secured its Claim as of the Petition Date.

      e.     To the extent that the secured claim of State Farm is determined to be under-secured, the portion of the claim that is determined to be unsecured pursuant to 11 U.S.C. §506(a) shall be an Allowed unsecured claim in both the LSI Retail case and the LSI case, however the unsecured claim shall be entitled to only one satisfaction and payment in full.

**CTC**

6.4 – **Jefferson County Treasurer.**  The Class 2.2 Secured Claim consists of the Allowed Secured Claim held by the Jefferson County Treasurer or assigns and secured by real property owned by CTC.  The Class 2.2 Secured Claim is impaired by this Plan and shall be treated as follows.

a.      The Class 2.2 claim shall be fixed in an amount that is equal to the amount due on the claim as of the Confirmation Date.

b.      The Class 2.2 claim will bear interest at the applicable statutory rate.

c.      The monthly payment of the Class 2.2 claim shall be calculated based upon an amortization period equal to 60 months less the number of months from the Petition Date until the Confirmation Date, and paid in equal monthly installments over the resulting term.  The first monthly payment shall be due on the last day of the first full month following the Effective Date of the Plan.  Notwithstanding, the amortized payment plan, the Allowed Secured tax claim will be paid in full upon sale of any parcel of real property that secures such a claim.

d.      The Class 2.2 claimant will retain all liens that secured its Claim as of the Petition Date.

**6.5 – Mountain Rising Development.**  The Class 2.3.1 and 2.3.2 Secured Claims consist of the Allowed Secured Claims held by Mountain Rising Development ("MRD") and secured by the CTC shopping center.  The Class 2.3.1 and 2.3.2 Secured Claims are impaired by this Plan.  The Class 2.3.1 and 2.3.2 Secured Claims will be treated and paid as follows:

a.      Pursuant to 11 U.S.C. § 506, the Class 2.3.1 and 2.3.2 Claims are secured up to the value of the collateral for the Class 2.3.1 and 2.3.2  Claims and unsecured for the balance. The Class 2.3.1 and 2.3.2 claims shall be fixed in an amount that is either: (i) $3,000,000, the value of the collateral securing the claim; (ii) determined by the Court based on the value of the collateral for the Class 2.3.1 and 2.3.2 claims as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

b.      The Class 2.3.1 and 2.3.2 claims will bear interest at the rate of: (i) 3.25% per annum commencing on the Effective Date of the Plan; or (ii) if Class 2.3.1 and 2.3.2 object to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the

requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by CTC and the Class 2.3.1 and 2.3.2 claimant.

      c.     The monthly payment of the Class 2.3.1 and 2.3.2 claims shall be calculated based upon a twenty five (25) year amortization of the Claim and paid in equal monthly installments or as may be agreed to by the parties or set by the Court. The first monthly payment shall be due on the last day of the first full month following the Effective Date. Notwithstanding the amortization schedule, the entire amount due with respect to the Class 2.3.1 and 2.3.2 claims shall be due and payable on the seven (7) year anniversary of the Effective Date of the Plan.

      d.     The Class 2.3.1 and 2.3.2 claimant will retain all liens that secured its Claim as of the Petition Date.

      e.     To the extent that the secured claim of MRD is determined to be under-secured, the portion of the claim that is determined to be unsecured pursuant to 11 U.S.C. §506(a) shall be an Allowed unsecured claim in the CTC case and an Allowed secured claim in the LSI case since LSI provided deeds of trust to secure the CTC claims. MRD claim shall be entitled to only one satisfaction and payment in full. To the extent that MRD is not paid in the CTC case, it will be paid the balance due in the LSI case but the unsecured deficiency will not be paid by CTC.

**LSI**

   **6.6 – 3NP.** The Class 3.2 Secured Claim consists of the Allowed Secured Claim held by 3NP ("3NP") secured by various parcels of real property in Colorado. The Class 3.2 Secured Claim is impaired by this Plan. The Class 3.2 Secured Claim will be treated and paid as follows:

      a.     Pursuant to 11 U.S.C. § 506, the Class 3.2 Claim is secured up to the value of the collateral for the Class 3.2 Claim and unsecured for the balance. The Class 3.2 claim shall be fixed in an amount that is either: (i) the amount of the claim; (ii) determined by the Court based on the value of the collateral for the Class 3.2 claim as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

b.      The Class 3.2 claim will bear interest at the rate of: (i) 3% per annum commencing on the Effective Date of the Plan; or (ii) if Class 3.2 objects to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Class 3.2 claimant and the Debtor.

c.      The monthly payment of the Class 3.2 claim shall be interest only until the maturity date which will be on the seven year anniversary of the Effective Date of the Plan.

d.      The Class 3.2 claimant will retain all liens that secured its Claim as of the Petition Date.

e.      In the event that any of the collateral for the Class 3.2 claim is sold during the seven year term of the Plan, the net proceeds of sale shall be paid 85% to the Class 3.2 claimant until its claim is paid and 15% will be retained by the Debtor until the Class 3.2 claim is paid.

6.7 – **Alden Financial Inc.**   The Class 3.3 Secured Claim consists of the Allowed Secured Claim held by Alden Financial Inc. ("Alden") secured by a 25 acre commercial lot at Jefferson Corporate Center, Lot 3E in Jefferson County, Colorado. The Class 3.3 Secured Claim is impaired by this Plan.  The Class 3.3 Secured Claim will be treated and paid as follows:

a.      Pursuant to 11 U.S.C. § 506, the Class 3.3 Claim is secured up to the value of the collateral for the Class 3.3 Claim and unsecured for the balance. The Class 3.3 claim shall be fixed in an amount that is either: (i) the amount of the claim; (ii) determined by the Court based on the value of the collateral for the Class 3.3 claim as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

b.      The Class 3.3 claim will bear interest at the rate of: (i) 3% per annum commencing on the Effective Date of the Plan; or (ii) if Class 3.3 objects to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C.

§1129(b) of the Code; or (iii) such other rate as agreed by the Class 3.3 claimant and the Debtor.

      c.      The monthly payment of the Class 3.3 claim shall be interest only until the maturity date which will be on the seven year anniversary of the Effective Date of the Plan.

      d.      The Class 3.3 claimant will retain all liens that secured its Claim as of the Petition Date.

      e.      In the event that any of the collateral for the Class 3.3 claim is sold during the seven year term of the Plan, the net proceeds of sale shall be paid 85% to the Class 3.3 claimant until its claim is paid and 15% will be retained by the Debtor until the Class 3.3 claim is paid.

**6.8 – County Treasurer Classes.**   The Class 3.4, 3.6, 3.7, and 3.8 Secured Claims consist of the Allowed Secured Claim held by the Douglas, Jefferson, Larimer, and Park County Treasurers or assigns and secured by real property owned by LSI in such counties.  The Class 3.4, 3.6, 3.7, and 3.8 Secured Claims ("County Tax Claims") are impaired by this Plan and shall be treated as follows.

      a.      The County Tax Claims shall be fixed in an amount that is equal to the amount due on the claims as of the Confirmation Date.

      b.      The County Tax Claims will bear interest at the applicable statutory rate.

      c.      The monthly payment of the County Tax Claims shall be calculated based upon an amortization period equal to 60 months less the number of months from the Petition Date until the Confirmation Date, and paid in equal monthly installments over the resulting term.  The first monthly payment shall be due on the last day of the first full month following the Effective Date of the Plan.  Notwithstanding, the amortized payment plan, the Allowed Secured tax claim will be paid in full upon sale of any parcel of real property that secures such a claim.

      d.      The County Tax Claims will retain all liens that secured such Claims as of the Petition Date.

6.9 – **Mountain Rising Development.** The Class 3.5.1 through 3.5.4 Secured Claims consist of the Allowed Secured Claims held by Mountain Rising Development ("MRD") and secured by real property located at Jefferson Corporate Center, Lot 2D. The Class 3.5.1 through 3.5.4 Secured Claims are impaired by this Plan. The Class 3.5.1 through 3.5.4 Secured Claims will be treated and paid as follows:

a.     Pursuant to 11 U.S.C. § 506, the Class 3.5.1 through 3.5.4 Claims are secured up to the value of the collateral for the Class 3.5.1 through 3.5.4 Claims and unsecured for the balance. The Class 3.5.1 through 3.5.4 claims shall be fixed in an amount that is either: (i) $3,920,000, the value of the collateral securing the claim or the amount due on the claims, whichever is smaller; (ii) determined by the Court based on the value of the collateral for the Class 3.5.1 through 3.5.4 claims as of the Confirmation Date in accordance with 11 U.S.C. §506; or (iii) agreed upon by the parties.

b.     The Class 3.5.1 through 3.5.4 claims will bear interest at the rate of: (i) 3.25% per annum commencing on the Effective Date of the Plan; or (ii) if Class 3.5.1 through 3.5.4 object to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by CTC and the Class 3.5.1 through 3.5.4 claimant.

c.     The monthly payment of the Class 3.5.1 through 3.5.4 claims shall be calculated based upon a twenty five (25) year amortization of the Claim and paid in equal monthly installments or as may be agreed to by the parties or set by the Court. The first monthly payment shall be due on the last day of the first full month following the Effective Date. Notwithstanding the amortization schedule, the entire amount due with respect to the Class 3.5.1 through 3.5.4 claims shall be due and payable on the five (5) year anniversary of the Effective Date of the Plan.

d.     The Class 3.5.1 through 3.5.4 claimant will retain all liens that secured its Claim as of the Petition Date.

6.10 – **TIC Lending LLC.** The Class 3.8 Secured Claim consists of the Allowed Secured Claim held by TIC Lending, LLC. The Class 3.8 Secured Claim is impaired by this Plan and shall be paid as follows:

a.      The Class 3.8 Claim shall be fixed in an amount that is equal to the amount due on the claim as of the Confirmation Date.

b.      The Class 3.8 Claim will bear interest at the rate of 2% per annum or as otherwise agreed by the parties.

c.      The monthly payment of the Class 3.8 Claim shall be calculated based upon an amortization period equal to 60 months commencing on the Effective Date of the Plan, and paid in equal monthly installments.  The first monthly payment shall be due on the last day of the first full month following the Effective Date of the Plan. Notwithstanding, the amortized payment plan, the Allowed Secured tax claim will be paid the net proceeds derived from sale of the collateral that secures such claim, until the claim is paid in full.

d.      The Class 3.8 Claim will retain all liens that secured such Claims as of the Petition Date.

6.11 – **UMB Bank.**  The Class 3.9 Secured Claim consists of the Allowed Secured Claim held by UMB Bank and is secured by real property consisting of 3 acres located at Chatfield and Kipling in Littleton, Colorado.  The Class 3.9 Secured Claim is unimpaired by this Plan.

## ARTICLE VII
## SPECIFICATION AND TREATMENT OF
## UNSECURED CREDITOR CLAIMS

7.1 – Classes 1.5, 2.4, and 3.10 consist of those unsecured creditors of the Debtors who hold Allowed Claims.  Class 1.5, 2.4, and 3.10 claimants shall receive payment in full of their Allowed Claims over a ten (10) year period commencing on the Effective Date of the Plan.  Interest at the rate of 1% per annum shall accrue and be paid on the unpaid balance of the Class 1.5, 2.4, and 3.10 claims.  Payments to such claimants shall be made monthly based on an amortized payment of interest and principal over the ten year life of the Plan.   Notwithstanding the amortization period, the total outstanding amount of principal and interest that remains due on the seven (7)

year anniversary of the Effective Date of the Plan shall be due and payable on such date in a balloon payment.

7.2 - In addition to the distribution set forth above, Classes 1.5, 2.4, and 3.10 shall be entitled to receive the proceeds whether obtained by litigation or settlement, net of attorney fees, expert fees, costs, obtained from any action undertaken by the Debtors to collect Avoidance Actions and net of any unpaid Unclassified Priority Claims.

7.3 – Classes 1.6.1 through 1.6.6 and 2.5.1 through 2.5.6 consist of unsecured claims held by creditors who are party to executory contracts with the Debtors.  The Debtors are assuming the executory contracts that are held by each of the creditors in these classes pursuant to the provisions of Plan paragraph 10.1.  The Debtor who is party to each such executor contract shall pay the unsecured cure with respect to each assumed contract within 180 days of the Effective Date of the Plan.

## ARTICLE VIII
### SPECIFICATION AND TREATMENT OF INTERESTS

8.1 - Classes 1.7, 2.6, and 3.11 include the Interests in the Debtors held by the pre-confirmation members and partners.  Classes 1.7, 2.6, and 3.11 are unimpaired by this Plan.

## ARTICLE IX
### MEANS FOR THE PLAN'S EXECUTION

9.1 - **Operation of Business**.  The Debtors shall be empowered to take such action as may be necessary to perform its obligations under this Plan.

9.2 – **Management Fees and Costs.**  The Debtors shall be entitled to compensate its management with reasonable compensation for services following confirmation of the Plan.  Funding for such fees will be derived from the operation of the Debtors' business.

9.3- **Effectuating the Plan**.  On the Effective Date of the Plan, Alan Fishman shall be appointed as the agent of the Debtors, pursuant to appropriate corporate law,

pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to execution of documents.

9.5 – **Sale of Assets.**  During the term of the Plan the Debtors shall be generally authorized to sell any of their assets as they may determine to be appropriate in order to meet their obligations under the Plan.

9.4 - **Disputed Claim Procedure**. Distributions to any class of creditor will only be made on account of Allowed Claims.  In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held in an interest bearing bank account until the Claim is Allowed or disallowed.  If Allowed, the Claim will be paid its appropriate share of the withheld payment.  If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants, or if all holders of Allowed Claims have been paid in full, paid to Debtors.

9.5 - **Claims and Litigation Bar Date and Standing**.  All Claim objections and Avoidance Actions in the case must be filed no later than 120 days following the Effective Date.  The Debtors shall have standing to commence, prosecute, and settle claim objections, Litigation, and avoidance actions without need for Court approval.

9.6 - **Administrative Expense Bar Date**.  All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 45 days following the Effective Date of the Plan.

9.7 - **Monthly Installments.**  Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan.  The Debtors shall then have a fifteen day grace period within which the monthly payment must be received by the payee before the Debtors shall be in default, unless a longer period is specified elsewhere in the Plan.

9.8 - **Final Decree.**  The Debtors will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or 180 days after the Effective Date of the Plan.

9.9 - **Quarterly Fees.**  Prior to the entry of the final decree, the Debtors shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

9.10 - **Exemption from Transfer Taxes.**  Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.11 – **Contractual Relationship.**  The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtors and their creditors.  In the event of a default by the Debtors under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtors for breach of contract, the Plan.  Any secured creditor claiming a breach of the Plan by the Debtors will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by the Debtors must provide written notice to the Debtors of the claimed default, the notice must provide the Debtors a thirty (30) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan.  Upon the Debtors' failure to cure the default within such thirty day period, the creditor may proceed to exercise their rights and remedies.

9.12 – **Independent Provisions.**  Should it be determined by the Court that any provision of the Plan is impermissible or grounds for the denial of confirmation, the Debtors shall have the right, but not the obligation, to delete the impermissible provision and proceed with confirmation of the Plan provided that deletion of the offensive provision would result in a confirmable Plan.

9.13 – **Independent Plans.**  This Plan is a joint Plan for the Debtors. Notwithstanding the joint Plan, it is not a requirement or condition precedent that the Plan be confirmed for all three Debtors in order for the Plan to be confirmed and become effective for one Debtor.

9.14 - **Avoidance Actions.**   The Debtors have authority post-confirmation to pursue all Avoidance Actions for the benefit of creditors and the enhancement of distributions under the terms of the Plan.   The Debtors shall have sole authority to determine whether to pursue through litigation or settle any avoidance action.   Any settlement shall require notice to creditors and opportunity for a hearing.   The Debtors may retain counsel to recover the Avoidance Actions on reasonable terms without need for Court approval of fees or costs.

9.15 – **Professional Retention Post-Confirmation.**   Court approval shall not be required for either professional retention or compensation following the Effective Date of the Plan.   The Debtors may retain and compensate those brokers deemed appropriate to market and sell the real and personal property that must be sold under the Plan and Stipulation without need for Court approval.

9.16 – **Prepayment.**   The Debtors shall be entitled to prepay any claim or loan under this Plan prior to its maturity date without any prepayment penalty or charge and without suffering any form of default.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1   - On the Effective Date of the Plan, the Debtors hereby assume those executory contracts and unexpired leases listed in Exhibit A attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date.   On the date of the entry of an Order confirming the Plan, the Debtors shall be the holders of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtors and the other parties thereto.   Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. §365(b) and (f).

10.2 - On the Effective Date of the Plan, the Debtors will reject all executory contracts and unexpired leases to which they are a party which are listed in Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by

prior Order of the Bankruptcy Court prior to the Confirmation Date.    Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. §365.    Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. §365 and the Rules.

10.4 -    **Claims Arising from Rejection.**    All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtors' rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.    Any claims not filed within such time shall be forever barred against the Debtors, their estates and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as unsecured Claims.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    **Revestment.**    On the Effective Date of the Plan all property of the estates shall revest in the Debtors free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.

11.2    **Retention of Jurisdiction**.    Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.    Determination of the allowability of claims upon objection to such claims by the Debtors-in-Possession or by any other party in interest;

2.    Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(2), including compensation of the parties entitled thereto;

3.    Resolution of any disputes regarding interpretation of the Plan;

4. Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtors from action by creditors;

5. Modification of the Plan pursuant to 11 U.S.C. §1127;

6. Adjudication of any causes of action, including avoiding powers actions, brought by the Debtors-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

7. Adjudication of any cause of action brought by the Debtors-in-Possession, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtors exercising rights and powers as provided in 11 U.S.C. §542-549. This section shall not be construed to limit any other power or right which the Debtors may possess under any section of the Code;

8. To close the case after the Plan becomes effective and reopen it when Plan payments are completed to enter the discharge order; and

9. Enter a Discharge and Final Decree

11.3 - **Satisfaction of Claims.** The Debtors shall receive a discharge on the Effective Date of the Plan pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4 **Headings**. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5 **Notices.** All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

a.    To:

LSI Retail II, LLC
Conifer Town Center, LLC
Land Securities Investors, Ltd.
8361 North Rampart Range Road
Suite 208
Littleton, CO  80125

With copies to:
Lee M. Kutner
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Fax: 303-832-1510
Email: lmk@kutnerlaw.com

Jeffrey Weinman
Weinman & Associates, P.C.
730 17th Street, Suite 240
Denver, CO  80202
Fax: 303-572-1011
Email: jweinman@epitrustee.com

b.    To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, at the address set forth for the claimant in the Debtors' Schedules filed with the Court.

11.6 - **Successors and Assigns**.  The Plan will be binding upon the Debtors, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within three months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Existence**.   Any Creditors Committee appointed in the bankruptcy case shall terminate on the Effective Date of the Plan.

## ARTICLE XII
## CONFIRMATION REQUEST

12.1 - The Debtors, as proponents of the Plan, request confirmation of the Plan pursuant to 11 U.S.C. §1129. The Debtors will solicit acceptance of the Plan after their Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest. In the event the Debtors do not obtain the necessary acceptances of its Plan, they may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b). The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: May 24, 2013.

LSI RETAIL I, LLC

By: _____
     Alan R. Fishman, Manager

CONIFER TOWN CENTER, LLC

By: _____
     Alan R. Fishman, Manager

LAND SECURITIES INVESTORS, LTD.

By: Sunset Management Services, Inc. its general
     partner

     By: _____
          Alan R. Fishman, President

Lee M. Kutner, Esq.
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone:  303- 832-2400
Fax: 303-832-1510
Email: lmk@kutnerlaw.com

ATTORNEYS FOR LAND SECURITIES INVESTORS, LTD.


Jeffrey Weinman
Weinman & Associates, P.C.
730 17th Street, Suite 240
Denver, CO  80202
Fax: 303-572-1011
Email: jweinman@epitrustee.com

ATTORNEYS FOR LSI RETAIL II, LLC AND CONIFER TOWN CENTER, LLC

**EXHIBIT A**

**Executory Contracts and Unexpired Leases Assumed**

1.   All contracts and leases previously assumed or for which a motion to assume is pending.

2.   LSI Retail contracts:

    a.  Mike's Building Maintenance, LLC

    b.  Colorado Mechanical Systems Inc.

    c.  Colorado Lighting, Inc.

    d.  Always Green LLC

    e.  Schindler Elevator Corp.

    f.  Liquid Environmental Solutions

3.   CTC contracts:

    a.  Mike's building Maintenance, LLC

    b.  Liquid Environmental Solutions

    c.  Century Link

    d.  ADT/Tyco Security

    e.  Systems Group

    f.  Thyssenkrup Elevator

**EXHIBIT B**

**Executory Contracts and Unexpired Leases Rejected**

A.      All leases and contracts previously rejected by Court Order or for which a motion to reject is pending.