## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>CONIFER TOWN CENTER, LLC<br>Debtor. | Case No: 13-11135-MER<br>Chapter 11 |

### LSI RETAIL IV, LLC'S MOTION TO REOPEN
### BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 350(b) AND F.R.B.P. 5010

The Movant, LSI Retail IV, LLC ("**Movant**" or "**LSI Retail IV**"), hereby submits the following Motion to Reopen Bankruptcy Case Pursuant to 11 U.S.C. § 350(b).

**1.  JURISDICTION**

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

2. With this Motion, Movant seeks to reopen the bankruptcy case pursuant to 11 U.S.C. § 350(b) in order to file a Motion for Reconsideration Pursuant to 11 U.S.C. § 502(j) regarding the prior allowance of Proof of Claim No. 8 filed by Village at Elk Crossing, LLC ("**VEC**") based upon fraud and misrepresentation (the "**VEC Claim**"). *See* Claims Register, Claim No. 8-1. The proposed Motion for Reconsideration is attached as Exhibit 1.

3. Movant is the 65% majority member of the Debtor and has standing to request to reopen this bankruptcy case and to challenge the VEC Claim.

4. F.R.B.P. 5010 permits any "party in interest" to file a motion to reopen a bankruptcy case. Movant is a "party in interest" and maintains standing to file this Motion.

1

2. **BACKGROUND**

**Court Appointed Receiver Over LSI Retail IV**

5. On January 2, 2020, the Denver District Court entered its Appointment of Receiver and Charging Order (the "**Receivership Order**") pursuant to which it appointed Andrew S. Miller, of Miller Frishman Group LLC, as court appointed receiver (the "**Receiver**") for and over Land Securities Investors, Ltd. ("**LSI**") and Sunset Management Services, Inc. ("**Sunset**") (collectively, the "**Companies**"). *See* Receivership Order, attached as Exhibit 2.

6. Thereafter, on January 28, 2020, the Denver District Court entered its Order Re: Receiver's Expedited Motion for Clarification Regarding Appointment of Receiver and Charging Order, pursuant to which the Receivership Order was expanded to include certain affiliated entities of the Companies, including LSI I LLC, The Conifer II LLC, Land Securities Investors VI LLC, American Property Holdings LLC, Dick & Co., Centennial Village Development LLC, LSI Retail I LLC, LSI Retail II LLC, LSI Retail III LLC and LSI Retail IV LLC (the "**Affiliated Entities**"). *See* Exhibit 3, January 28, 2020 Order.

7. One of the Affiliated Entities is LSI Retail IV. Thus, the Receiver has managerial control and authority over LSI Retail IV and is authorized to submit this instant Motion on behalf of LSI Retail IV.

**Debtor's Bankruptcy Background**

8. On August 17, 2004, the Debtor was formed and an Operating Agreement (the "**Operating Agreement**") was executed between LSI Retail IV and VEC. A copy of the Operating Agreement is attached as Exhibit 4.

9. Pursuant to the Operating Agreement, LSI Retail IV was the Class A Member and was entitled to elect the manager of CTC who "shall be granted the sole authority and

management responsibilities with respect to the development of the Property, the construction of improvements thereon and the obtaining of financing for the development and construction of the Property . . ." *See* § 9.3(f) of the Operating Agreement, attached as <u>Exhibit 4.</u>

10. On or about December 30, 2005, a First Amendment to the Operating Agreement was executed which confirmed that LSI Retail IV owned 65% of the Debtor, while VEC only owned 35%. A copy of the First Amendment is attached as <u>Exhibit 5.</u>

11. The Debtor filed its voluntary Chapter 11 petition on January 29, 2013.

12. On May 20, 2013, the VEC Claim was filed. No objections to the VEC Claim were made.

13. On September 4, 2014, the Debtor filed its Fourth Amended and Restated Joint Plan of Reorganization (the "**Bankruptcy Plan**") which identified an asset of CTC related to potential reimbursement of traffic impact fees paid by Jefferson County (the "**Traffic Impact Fees**"). A copy of the Bankruptcy Plan is at Docket No. 358. Upon information and belief, the Traffic Impact Fees were development fees paid by the Debtor to Jefferson County that can be reimbursed to the Debtor under certain circumstances. Those circumstances came to fruition and every month, the Debtor was to receive payment of the Traffic Impact Fees in varying amounts ranging from $2,000.00 to $25,000.00 since 2016. *See* <u>Exhibit 6</u> (November 2019-November 2020 checks paid to the Debtor).

14. After the Bankruptcy Plan was confirmed, on September 4, 2014, CTC filed a Supplement to Fifth Amended Disclosure Statement to Accompany Chapter 11 Joint Plan of Reorganization, which resulted in the Debtor assigning to Mountain Rising Development LLC the right to collect the first $350,000 of the Traffic Impact Fees being reimbursed by Jefferson County. *See* Fifth Amended Disclosure Statement which is located at Docket No. 359.

15. Yet, any Traffic Impact Fees collected above $350,000 were to be paid to the Debtor for the purpose providing distributions to unsecured creditors of CTC, as fully set forth in the Bankruptcy Plan and related documents. *See id.*

16. Subsequent to being appointed as a Receiver by the Denver District Court, the Receiver undertook an investigation of the Companies and Affiliated Entities. The assets, liabilities and financial affairs of the Companies and Affiliated were extensive and encompassed a wide variety of real property assets. Through that investigation, the Receiver uncovered that Jefferson County was supposed to be paying the Debtor every month significant payments for the Traffic Impact Fees since at least 2016. Prior to this information being discovered, the Receiver was completely unaware the Debtor owned a substantial asset and was supposed to be receiving payment of the Traffic Impact Fees from Jefferson County.

17. To the contrary, at the inception of the state court receivership, the Receiver was advised by various parties that formerly controlled the Debtor that the Debtor filed for bankruptcy protection in 2013 and that all of its assets had been liquidated in connection with that bankruptcy. As a result, the Receiver did not previously believe the Debtor held any assets or was otherwise a going concern.

18. While it is unclear how much money is still left to be reimbursed to the Debtor from Jefferson County, one projection the Receiver received from Jefferson County shows future reimbursements could exceed potentially $2,503,517.53. *See* Exhibit 7 (summary of remaining Traffic Impact Fees). Such a monetary recovery would present an enormous value to the Debtor, and thus, to LSI Retail IV as its majority member.

19. Based on the Receiver's review of the Debtor's bank records, it appears Mountain Rising Development was already paid its required $350,000 of the Traffic Impact Fees and that

such payment was made in or around October 2018. As a result, any remaining Traffic Impact Fees should likely be paid to unsecured creditors of the Debtor and/or directly to the Debtor and its members, if payments are no longer owed to unsecured creditors.

20. The Receiver's prior ignorance of the Traffic Impact Fees is the result of apparent embezzlement of the same by the Debtor's former manager who is the individual who was also one of the Debtor's representatives during these reorganization proceedings.

21. Specifically, from at least October 2018 through the present, Jefferson County has made monthly payments of Traffic Impact Fees to CTC into its Wells Fargo bank account. However, every single month, Mr. David Coppfer, who is the sole signatory on the Debtor's bank account and also a purported manager of the Debtor, has been transferring the Traffic Impact Fees to himself personally. The Receiver has reviewed copies of the checks diverting the Traffic Impact Fees from the Debtor to Mr. Coppfer. *See* Exhibit 8 (checks paid to David Coppfer from the Debtor).

22. After the Receiver sent a demand letter to Mr. Coppfer requesting a turnover of the Traffic Impact Fees, Mr. Coppfer initially attempted to argue that he was an unsecured creditor of the Debtor, and thus, Mr. Coppfer individually claimed an entitlement to 100% of the remaining Traffic Impact Fees.

23. Upon further investigation, the Receiver discovered that Mr. Coppfer's claim under the Bankruptcy Plan was purely a contingent claim and was contingent on Mr. Coppfer actually paying an alleged deficiency obligation to FirstBank and/or Mountain Rising Development. Mr. Coppfer was never required to make any deficiency payments, and thus, Mr. Coppfer's claim in the CTC bankruptcy never became an accrued claim and was never entitled to repayment.

24. On February 16, 2021, the Receiver sent a demand letter to Mr. Coppfer demanding a turnover of the Traffic Impact Fees. *See* Exhibit 9.

25. In response to the Receiver's demands, Mr. Coppfer then retained bankruptcy counsel in attempt to manufacture a new argument in support of him retaining the Traffic Impact Fees. Mr. Coppfer as a result pivoted and claimed it was not his individual claim in the CTC bankruptcy that should be repaid, but instead it was the unsecured VEC Claim in the amount of $2,563,868.06 that should be repaid. *See* Exhibit 10 (David Wadsworth February 2021 letter).

26. However, upon information and belief, Mr. Coppfer was not actually paying VEC any of the Traffic Impact Fees and instead was pocketing those funds himself individually.

27. In response to VEC's new claim to the Traffic Impact Fees, the Receiver sent a follow up demand letter to VEC explaining that the VEC Claim was not valid and demanding yet again a turnover of the Traffic Impact Fees to the Debtor for distribution under the Operating Agreement. *See* Exhibit 11 (response letter from Receiver).

28. In any event, after careful review of the VEC Claim, it is apparent the amounts stated in the VEC Claim may not be properly due and owing to VEC. *See also* Exhibit 12 which is a Memorandum prepared by VEC's attorney's explaining the VEC Claim. As a result, LSI Retail IV seeks to reopen this bankruptcy and to challenge the VEC Claim under 11 U.S.C. § 502(j) of the Bankruptcy Code for fraud and misrepresentation.

3. **ARGUMENT**

29. In *In re: MacIntyre v. JP Morgan Chase Bank, N.A.*, 2019 Bankr. LEXIS 122, 2019 WL 1035683 (10th Cir. BAP 2019), the Tenth Circuit Court of Appeals outlined the standards required to reopen a bankruptcy case under 11 U.S.C. § 350(b). The court explained as follows:

> Bankruptcy Code § 350(b) provides '[a] case may be reopened . . . to administer assets, to accord relief to the debtor, or for other cause. Federal Rule of Bankruptcy Procedure 5010 states '[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b).' The phrase 'or for other cause' is a broad term which gives the bankruptcy court discretion to reopen a closed case or proceeding when cause for such reopening has been shown. The party moving to reopen a bankruptcy case has the burden of proof. A motion to reopen should be liberally granted. The decision whether to reopen 'should emphasize substance over technical considerations.' Reopening a closed bankruptcy case is a ministerial act that does not grant any substantive relief.

*See id, at \*6.*

30. In this case, cause exists to reopen the bankruptcy case for the purpose of permitting LSI Retail IV to file the Motion for Reconsideration which is attached as <u>Exhibit 1</u> to this Motion. As indicated in the Motion, the financial records of the Debtor reveal the VEC Claim was fraudulent in that no actual debt was due and owing to VEC because upon agreement with VEC the debt was converted to equity nearly 4 years before the bankruptcy was even filed. *See* <u>Exhibit 13</u> which is the Debtor's 2012 tax return showing no debt owed to VEC. As a result, Movant intends to file the Motion for Reconsideration of the VEC Claim pursuant to 11 U.S.C. § 502(j), F.R.B.P. 3008 and 9024.

31. Second, cause exists to reopen the bankruptcy to resolve the current dispute as to repayment of the Traffic Impact Fees and to obtain a court determination as to which party those Traffic Impact Fees should continue to be repaid. The VEC Claim is listed in the Fifth Amended Disclosure Statement to Accompany Chapter 11 Joint Plan of Reorganization as purely an "indemnification" claim. *See* <u>Exhibit B</u> to the Fifth Amended Disclosure Statement, which is located at Docket No. 359. VEC has not demonstrated it was required to pay any monies to creditors post-confirmation of the Bankruptcy Plan, and therefore, VEC would not be entitled to reimbursement of the VEC Claim given it was based upon alleged indemnification under the

7

Operating Agreement.

32. Third, cause exists to reopen the bankruptcy case because Mr. Coppfer was one of the managers of the Debtor and was entrusted to object to creditors' claims on behalf of the Debtor. However, because Mr. Coppfer was a member of VEC and participated in submitting the VEC Claim to this Court, Mr. Coppfer had every incentive not to challenge the VEC Claim because he would personally benefit from VEC being repaid as a member of VEC. Thus, Mr. Coppfer violated his duties of loyalty to the Debtor by failing to object to the VEC Claim and now yet again by continuing to pocket 100% of the Traffic Impact Fees without payment to either the Debtor or VEC.

33. In conferral with VEC prior to filing this Motion, VEC contended that Movant's request for reconsideration of the VEC Claim was time barred pursuant to 11 U.S.C. § 1144. However, 11 U.S.C. § 1144 only applies if the Movant is seeking "revocation of an order of confirmation." Movant is not requesting a revocation of the Order approving the Bankruptcy Plan. To the contrary, Movant is moving for reconsideration of the VEC claim under 11 U.S.C. § 502(j). The timing requirements for bringing a motion to reopen a case for reconsideration of an order allowing a claim against the estate which was entered without contest is governed by F.R.B.P. 9024. Pursuant to F.R.B.P. 9024, a motion to reopen a case to reconsider an allowed claim "is not subject to the one year limitation prescribed in Rule 60(c)." In this case, the VEC Claim was considered an "allowed claim" because no party objected to the VEC Claim. Thus, the claim was allowed "without a contest" and Movant maintains the right to bring its Motion for Reconsideration of the VEC Claim at any time.

34. The Receiver only recently discovered the basis for the objection to the VEC Claim after several attempts by the Receiver to seek discovery from Mr. Coppfer. As outlined

above, Mr. Coppfer initially told the Receiver he maintained the personal right individually to collect all of the Traffic Impact Fees because Mr. Coppfer's proof of claim was allegedly not objected to in connection with the bankruptcy. However, upon further discovery by the Receiver, it was apparent that Mr. Coppfer's proof of claim was purely contingent on Mr. Coppfer being required to pay out his own monies to creditors of CTC, which he never had to pay. After debunking the validity of Mr. Coppfer's personal claim, in February 2021, Mr. Coppfer's attorney sent correspondence to the Receiver explaining that he believed the VEC Claim was a proper claim and entitled VEC to receive the Traffic Impact Fees, even though Mr. Coppfer has not been turning over the Traffic Impact Fees to VEC. After several attempts at negotiating with Mr. Coppfer failed to materialize, the Receiver was left with no other choice but to file this instant Motion to Reopen seeking to challenge the VEC Claim.

35. LSI Retail IV has a substantial interest in challenging the VEC Claim because as majority member of CTC, it would otherwise be entitled to at least 65% of the Traffic Impact Fees.[1] Thus, if the VEC Claim is reconsidered and reduced, LSI Retail IV could potentially receive a substantial portion of the remaining Traffic Impact Fees to be paid by Jefferson County which may be in excess of $2,500,000 in value.

36. For the reasons identified in the Motion for Reconsideration which is attached as Exhibit 1, this Court has authority to reconsider the VEC Claim and should reconsider such claim by denying it outright.

4. **CONCLUSION**

For the reasons explained above, Movant requests this Court reopen the bankruptcy for

---

[1] LSI Retail IV claims it is entitled to more than 65% of the Traffic Impact Fees based upon the terms of the Operating Agreement and the additional capital contributions made by LSI Retail IV to CTC over time.

9

purposes of permitting Movant to file the Motion for Reconsideration which is attached as Exhibit 1.

DATED this 8th day of September, 2021.

**HATCH RAY OLSEN CONANT LLC**

*/s/ Brian T. Ray*
Brian T. Ray
Hatch Ray Olsen Conant LLC
730 17th Street, Suite 200
Denver, CO 80202
Telephone: (303) 298-1800
Fax: (303) 298-1804
bray@hatchlawyers.com