## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                     )
                                           )
CONIFER TOWN CENTER, LLC,                   )          Case No. 13-11135 MER
                                           )          Chapter 11
                    Debtor.                 )
                                           )

---

## VILLAGE AT ELK CROSSING, LLC'S RESPONSE AND OBJECTION TO MOTION TO REOPEN CASE

---

Creditor and interested party Village at Elk Crossing, LLC ("VEC"), through undersigned counsel, hereby submits its Response and Objection to LSI Retail IV, LLC's Motion to Reopen Bankruptcy Case Pursuant to 11 U.S.C. § 350(b) and F.R.B.P. 5010. In support of the Response and Objection, VEC states as follows:

### Introduction

There are two parallel histories that require explanation. The first history is what transpired, of record, in this very old and long-closed bankruptcy case. The second history is what transpired—and continues to transpire—in other forums in the seemingly endless feud between the children of John Dick, his family trusts, and Alan Fishman.

The first history provides a sufficient basis to summarily reject the Motion to Reopen because Movant LSI Retail IV, directly and indirectly, participated in the confirmation process, proposed the confirmed plan, and assented to its approval. That plan contained a firm claim objection deadline and no interested party objected to VEC's claim within that deadline. On just these facts, the Court could (and should) deny the Motion to Reopen.

To the extent that Court has concerns about process and summary adjudication, however, the second history provides a context and a backdrop that should put to rest any such concerns.

The second history is summarized as follows[1]: In 1984, John Dick created two family trusts for the benefit of his children. Dick Family Trust 1 ("DFT1") was created for the benefit of Tanya Dick-Stock and Dick Family Trust 2 ("DFT2" and, with DTF1, the "Trusts") was created for the benefit of John Dick Jr. Each of the Trusts owns 49.5% of Land Securities Investors, Ltd. ("LSI"), one of the co-proponents of the confirmed plan in this case. The remaining 1% of LSI is owned by Sunset Management Services, Inc. ("Sunset"). In 1996, Alan Fishman was appointed trustee of the Trusts. Mr. Fishman was also the sole owner and president of Sunset. Sunset "was formed to serve as the General Partner of LSI and to manage all of the property that LSI and its subsidiaries owned." *Disclosure Statement*, Docket No. 264, at 20.

As set forth in the Disclosure Statement, LSI had many land holdings. One such holding was its interest in Conifer Town Center, LLC ("CTC"), the debtor in this bankruptcy case. LSI owned 94.5% of LSI Retail IV[2] and LSI Retail IV, in turn, owned 65% of CTC (the remaining 35% of CTC is owned by VEC). Before, during and after the bankruptcy cases of CTC and LSI, Mr. Fishman was the manager of LSI, CTC and LSI Retail IV.

In 2012, prior to the filing of the CTC and LSI bankruptcy cases, the Dick children (i.e. the Trust beneficiaries) declared an intent to assume control of LSI. Following this declaration, in August 2013, "Tanya Dick, purportedly acting on behalf of [DFT1], filed suit in Jefferson County District Court, seeking to remove Mr. Fishman as trustee." *Disclosure Statement*, at 21. In October 2013, Tanya Dick filed a second suit against Mr. Fishman and Sunset and a third suit against Mr. Fishman, Sunset and other defendants. The third suit involved claims of

---

[1] Many of these background facts are excerpted from pages 7-23 of CTC's and LSI's Fifth Amended Disclosure Statement (the "Disclosure Statement"), Docket No. 264.

[2] Sunset also owned 0.5% of LSI Retail IV and an individual named Douglas Welker owned the remaining 5%. *See Disclosure Statement*, at 56.

mismanagement, fraud, and conversion.  In 2014, DFT2 sought comparable relief by initiating an action in Jefferson County and seeking to intervene in two of the DFT1 lawsuits.

The Court will recall that those lawsuits, and the disputes between the Trusts, the Dick children and Mr. Fishman, took center stage in this bankruptcy case for a short period of time, until the Court issued its order on April 30, 2014 holding that the Dick children, as Trust beneficiaries, lacked standing to the participate in the bankruptcy cases.  *See April 30, 2014 Order*, Docket No. 280, a copy of which is attached hereto as <u>Exhibit A</u>.  As beneficiaries, the Court concluded "their sole remedy is to sue Fishman in state court.  If they or others are ultimately appointed as trustees for the Trusts, then they will be able to pursue legal rights as equity holders in LSI, and perhaps, indirectly, in CTC."  *See id.* at 4.

Thus, the parallel history.  While the LSI and CTC bankruptcy cases wended their way to plan confirmation under the management of Mr. Fishman, the Dick children and the Trusts continued their fights against him and later, each other, in state court.  Although the litigation against Mr. Fishman went forward, he was not removed from his control positions prior to confirmation or closure of the CTC bankruptcy case.

In 2016, after the CTC bankruptcy case was closed, Mr. Fishman, the Trusts and the Dick children settled their disputes.[3]  Under the terms of the parties' settlement agreement dated September 28, 2016, Mr. Fishman resigned as trustee of the Trusts, relinquished all managerial roles, and transferred his interest in Sunset to a successor trustee.   Importantly, the settlement agreement also included a mutual release of any and all past, present and future claims between the Trusts, the Dicks, and Mr. Fishman including any and all claims relating to LSI and entities

---

[3] Background facts that follow are excerpted from the Denver District Court's Findings of Fact, Conclusions of Law, and Judgment entered July 29, 2019 in the LSI and Sunset judicial dissolution case.

owned by LSI.

While this settlement ended the litigation with Mr. Fishman, the Dicks were not done. In 2017, John Dick Jr. and DFT2 brought a lawsuit against Tanya Dick and DFT1. This case was settled in 2018. Also in 2017, LSI and Sunset filed a lawsuit against John Dick Sr.'s wife Mickey Dick. The case against Mickey Dick was stalled by disputes between the Trusts (each of which own 49.5% of LSI and were 50/50 owners of Sunset after the settlement with Mr. Fishman). In response to this deadlock, DFT1 commenced a lawsuit requesting judicial dissolution of LSI and Sunset. On July 29, 2019, the dissolution was granted and the court ordered the parties to submit proposed candidates to act as receiver in connection with the dissolution.

Andrew Miller was appointed receiver on January 14, 2020 "to effectuate the Court's decree of dissolution of" LSI and Sunset. *See* Exhibit 2 to *Motion to Reopen*. Two weeks later, on January 28, 2020, after the receiver requested clarification regarding whether his appointment extended to "Affiliated Entities" owned by LSI, such as LSI Retail IV, the court entered an order stating as follows: "Regarding authority over "Affiliated Entities," the Court cannot grant more power or control than pre-existed in the Companies. A majority owner may have ultimate control, but typically must consider minority interests. Thus, the Receiver's authority over the Affiliated Entities is the same as the Companies'." *See* Exhibit 2 to *Motion to Reopen*.

Some 20 months after entry of this clarification order, LSI Retail IV, now under the control of Mr. Miller, filed the Motion to Reopen. Thus, some seven years after the Court directed the Dick children to take their battles with Mr. Fishman to state court, the children are back—in the end run to end all end runs—through their hand-picked receiver, seeking to undo a confirmed plan they tried and failed to stop so many years ago. Making matters worse, the receiver has crafted a motion that is deliberately misleading. Unlike a bankruptcy trustee, the dissolution receiver is not

4

cloaked with any rights other than those of the receivership entity that he manages. The movant is LSI Retail IV, an active participant in the CTC and LSI bankruptcy cases, not some newcomer to the scene ignorant of what transpired in 2014 with the right to bring news causes of action, as the receiver would have the Court believe. The entire factual basis for the Motion to Reopen is the receiver's supposed lack of knowledge of what happened during confirmation, but that lack of knowledge is meaningless because the receiver stands in LSI Retail IV's shoes. Moreover, through the Motion to Reopen and using the receiver as a puppet, the Dicks are attempting an end run around their settlement agreement with Mr. Fishman and trying to pursue claims that they released some five years ago.

Simply put, there is no legal or factual basis for granting the Motion to Reopen. Granting the motion would be futile because there is no relief available to LSI Retail IV. It is bound by the terms of the plan that it proposed and to which it consented. In addition, there are a host of defenses that would preclude any reconsideration of VEC's claim including res judicata, equitable estoppel, waiver, and laches.

<u>**Scope of the Objection and Reservation of Rights**</u>

As set forth below, the contest of the Motion to Reopen is not the place to litigate the merits of the proposed objection to VEC's claim. Rather, the issue raised in the objection to the Motion to Reopen is whether "cause" for reopening exists and that issue involves the questions of whether reopening the case would be a futile act and whether reopening is barred by some legal doctrine, such as estoppel or waiver. For this reason, the scurrilous and entirely false attacks lodged by the receiver against VEC and its manager David Coppfer are not addressed herein in any detail. Suffice it to say that VEC reserves all rights in this respect if the Motion to Reopen is granted. However, so that there is no confusion, VEC makes two observations: (1) even a cursory review

of the signature lines on the many documents filed in the CTC and LSI bankruptcy case, including schedules, statements, plans and disclosure statements, as well as the plain terms of the disclosure statements, reveal that Mr. Coppfer played a minimal role in the bankruptcy cases and Mr. Fishman actively managed and directed the cases on behalf of the debtor entities and LSI Retail IV; and, (2) the accountant's letter (not attorney's letter as repeatedly mischaracterized by LSI Retail IV) attached as <u>Exhibit 12</u> to the Motion to Reopen does not support the argument that the VEC claim should be recharacterized as an equity claim; rather, if the Court reads the letter it will see that the accountant is opining as to why characterizing VEC's claim as a debt claim, rather than an equity claim, is supportable.  Thus, leaving aside the numerous infirmities with the Motion to Reopen based upon LSI Retail IV's prior actions (which is what this Objection addresses), the Court should remain mindful that the underlying arguments against allowance of VEC's claim are false.

### **Statement of Facts**

1.      CTC commenced this voluntary chapter 11 case on January 29, 2013.  *See* Docket No. 1.

2.      The CTC case was jointly administered with the related case of LSI, Case No. 13-11167 MER.  *See* Docket No. 23.

3.      Mr. Fishman, as manager of LSI Retail IV and Sunset, executed all documents on behalf of the two debtors in the jointly administered bankruptcy cases.  For example, he executed the voluntary petitions, the corporate resolutions, the lists of equity holders, the plans, and the disclosure statements.  *See, e.g.* Docket No. 4 (CTC List of Equity Security Holders); Docket No. 5 (CTC Corporate Resolution authorizing the bankruptcy filing); Docket No. 6 (CTC Corporate Ownership Statement); Docket No. 33 (CTC Statement of Financial Affairs and Schedules); Docket No. 264 (Disclosure Statement).

4.      VEC, and its owners David Coppfer and Edward C. Eucker, have never had any interest in LSI Retail IV or LSI.

5.      CTC disclosed in its Statement of Financial Affairs (the "SOFA") that traffic impact fees were one of its income sources when the case was filed.  *See* Docket No. 33 at 1.

6.      The bar date for filing claims in the CTC bankruptcy case was May 20, 2013.  *See*

6

Docket No. 46.

7.      On May 20, 2013, VEC timely filed a proof of claim in the CTC bankruptcy case in the amount of $2,563,868.06.  The claim was assigned Claim No. 8-1.  Claim 8-1 includes a summary attachment that identifies the bases for the claim.

8.      On September 9, 2014, CTC and LSI filed their Fourth Amended and Restated Joint Plan of Reorganization Dated April 1, 2014 (the "Plan").  *See* Docket No. 358.

9.      The Plan was accompanied by the Disclosure Statement, which was initially filed on April 15, 2014.

10.     CTC and LSI filed a Supplement to their Disclosure Statement on September 4, 2014, five days before filing the Plan.  *See* Docket No. 359.  In paragraph 6 of the Supplement, after describing transfers to be made pursuant to a settlement with Mountain Rising Development, LLC ("MRD"), CTC represents that it "will be left with no further operating assets.  It will hold some limited bank accounts and rights to collect payment from the traffic impact fees from the Conifer Metropolitan District in excess of the first $350,000 which will go to MRD."  *Id.* at 2.

11.     The secured claims of MRD are treated under Class 2.3.1 and Class 2.3.2 of the Plan.  *See id.* at 6.  Among other treatment, the Plan provides that MRD shall receive on account of its secured claims (consistent with the Supplement described above), "the first $350,000 in traffic impact fees payable from the Conifer Metropolitan District to CTC."  *Id.* at 11.

12.     The Disclosure Statement further describes these traffic impact fees as follows:

CTC's bankruptcy schedules also list as assets traffic impact fees due from Jefferson County of $3,004,19 and a receivable from the Conifer Metro District of $5,795,724.  The values of these assets are listed as unknown.  The Debtor, CTC, still believes the value is unknown.  CTC does not know when these monies will be paid or if they will be paid.  The fees related to the traffic impact matter are paid based upon the number of building permits issue in the relevant area and this number is subject to the vagaries of the marketplace. . . Some traffic impact fees in the amount of $58,162 have been received during the course of the bankruptcy proceedings and it is reasonable to project that equivalent sums will be received annually post-confirmation.

*Disclosure Statement*, at 25.

13.     General unsecured claims against CTC are treated under Class 2.4 of the Plan.  *See Plan* at 6.

14.     The Plan provides in Article 7.1 that Class 2.4 claimants "shall receive payment in full of their Allowed Claims over a ten (10) year period commencing on the Effective Date of the Plan."  *Id.* at 16.

7

15.     "Allowed Claim" is defined in the Plan as "a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case . . . as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order." *Id.* at 3.

16.     "Effective Date" is defined in the Plan as "the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect." *Id.* at 4.

17.     "Order of Confirmation" is defined in the Plan as "the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the [Bankruptcy] Code." *Id.* at 5.

18.     The Plan provides that "[a]ll Claim objections and Avoidance Actions in the case must be filed no later than 120 days following the Effective Date." *Id.* at 18.

19.     Section 9.4 of the Plan provides that "[d]istributions to any class of creditor will only be made on account of Allowed Claims." *Id.*

20.     The equity interests of LSI Retail IV and VEC in CTC were treated under Class 2.6 of the Plan. *See id.* at 17.

21.     The Plan provides in Article 8.1 that Class 2.6 is "unimpaired by the Plan." *Id.*

22.     The Disclosure Statements provides that, because it is unimpaired, Class 2.6 is "conclusively presumed to accept the Plan pursuant to 11 U.S.C. § 1126(f)." *Disclosure Statement*, at 3.

23.     Mr. Fishman was appointed as the agent of CTC and LSI "for the purpose of carrying out the terms of the Plan." *Plan*, at 18.

24.     Article 9.11 of the Plan provides that "[t]he Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtors and their creditors." *Id.* at 19.

25.     Article 11.6 of the Plan provides that "[t]he Plan will be binding upon the Debtors, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives." *Id.* at 23.

26.     In the Debtors' Summary of Voting Results filed October 17, 2014, CTC and LSI represent that the member of Class 2.6 (LSI Retail IV and VEC) "voted to accept the Plan," although it is not clear if affirmative ballot were cast or if this was deemed acceptance because the interests were unimpaired. *See* Docket No. 367 at 2.

27.     The Order of Confirmation was entered on November 14, 2014 *nunc pro tunc* to November 3, 2014.  *See* Docket No. 373.  The Effective Date of the Plan was therefore November 3, 2014.

28.     The Final Decree was entered in the CTC bankruptcy case on June 2, 2015.  *See* Docket No. 423.

29.     The CTC bankruptcy case was closed on June 19, 2015.  *See* Docket No. 426.

30.     No objection to VEC's claim was ever filed in the bankruptcy case.

## <u>Argument</u>

11 U.S.C. § 350(b) allows a court to reopen a case "to administer assets, accord relief to the debtor, or for other cause."  The Motion to Reopen is not premised on administering assets or according relief to the debtor and therefore may only be granted if "other cause" is shown. Although the language of the statute is "rather thin," *In re Guzman*, 130 B.R. 489, 490 (Bankr. W.D. Tex. 1991)[4],  the case law interpreting § 350(b) provides substantial guidance.  Here, three considerations should guide the analysis.

First, reopening a closed case is a ministerial act that has no independent legal significance and determines nothing with respect to the merits of the case.  *See In re Woods*, 173 F.3d 770, 777 (10th Cir. 1999).  As a result, "the bankruptcy court ordinarily should not require the movant to prove the matter for which reopening is sought twice, once to reopen the case and then again at the hearing on the merits."  *In re MacIntyre*, 2019 WL 1035683 (10th Cir. BAP, March 5, 2019) (unpublished).  This rule is significant here because, as set forth above, VEC does not devote substantial effort in this Response and Objection to refuting the scurrilous and entirely false attacks made on David Coppfer and VEC, but reserves all rights in that regard.

---

[4] In *Guzman*, the court denied a motion reopen and observed in a footnote that the passage of time alone (just one year) was sufficient to invoke doctrine of laches.  *See* 130 B.R. at 492, n. 5.

9

Second, LSI Retail IV has the burden of proof. *See In re Eastep*, 562 B.R. 783, 787 (W.D. Okla. 2017) (citing *In re Cloninger III*, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997).

Third, a motion to reopen should be denied if the bankruptcy court "cannot afford the moving party any relief in the reopened case." *In re Schicke*, 290 B.R. 792, 798 (10th Cir. BAP 2003). Further, a motion to reopen should be denied if the person opposing relief demonstrates equitable defenses. *See, e.g. In re Frasier*, 294 B.R. 362, 367 (Bankr. D. Colo. 2003); *In re Parker*, 264 B.R. 685, 692 (10th Cir. BAP 2001). Here, each of these bars to LSI Retail IV asserting an untimely claim objection exists: reopening would be futile because (a) the terms of the confirmed Plan control and bar the objection and (b) the proposed claim objection is a thinly-veiled impermissible collateral attack on the Plan that is barred by operation of 11 U.S.C. § 1144. In addition, the proposed claim objection is barred by the doctrines of res judicata/finality, equitable estoppel, waiver and laches.

A.    The Receiver stands in the shoes of LSI Retail IV, LSI and Sunset.

The Motion to Reopen is largely premised on the false and inaccurate implicit suggestion that the receiver is somehow different than LSI Retail IV itself. This is not the law. A receiver stands in the shoes of the receivership entity, subject to all defenses that could be asserted against the entity. *See Johnson v. Studholme*, 619 F.Supp. 1347, 1349 (D. Colo. 1985) (general rule is that the receiver is "subject to all the defenses that could have been asserted against" the receivership entity); *see also Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990) (citing *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 429, 92 S.Ct. 1678, 1685, 32 L.Ed.2d 195 (1972) for the conclusion that a "receiver can only make a claim which the corporation could have made"); *Eberhard v. Marcu*, 530 F.3d 122, 133 (2nd Cir. 2008).

10

Here, these fundamental principles are echoed by the receivership orders entered by the court in the judicial dissolution case. The initial order, attached as <u>Exhibit 2</u> to the Motion to Reopen, provides that the receivership is necessary "to oversee the orderly dissolution of the Companies" (defined as LSI and Sunset) and the court authorizes the receiver "to take any actions which could be taken by the partners, shareholders, officers, directors, managers, members or other principals of the Companies." *See* <u>Exhibit 2</u> to *Motion to Reopen*, at 1, 8.

In the order clarifying the initial order attached as <u>Exhibit 3</u> to the Motion to Reopen, entered in response to the receiver's questions regarding whether the receivership included subsidiary entities such as LSI Retail IV, the court observed that it "cannot grant more power or control than pre-existed in the Companies. A majority owner may have ultimate control, but typically must consider minority interests. Thus, <u>the Receiver's authority over the Affiliated Entities is the same as the Companies</u>." (Emphasis added.) In effectuating the receivership, the Denver District Court thus explicitly described the Receiver's powers as the same as the companies' powers. *See also Francis v. Camel Point Ranch, Inc.*, 487 P.3d 1089 (Colo. App. 2019) (describing receiver appointed pursuant to dissolution order as "a court-mandated change in corporate management").

While perhaps obvious, it is critical to remain mindful of this status because LSI Retail IV is not some new party to the action lacking knowledge of what occurred six and seven years ago. To the contrary, LSI Retail IV, the party now seeking to reopen the case, was in the thick of every decision made while the cases remained open.

        B.    <u>LSI Retail IV, LSI, and Sunset were all parties to the bankruptcy cases and are bound by the limitations period for claim objections set forth in the confirmed Plan</u>.

There can be no dispute that (a) LSI, through its general partner Sunset, was one of the

11

Plan proponents; (b) CTC, through its manager Alan Fishman who also managed LSI Retail IV (the majority owner of CTC) was the other plan proponent; and, (c) LSI and Sunset as proponents and LSI Retail IV, either as an implicit plan proponent or through its Class 2.6 consent, all consented to and agreed to be bound by the terms of the Plan. The Plan was a new contractual relationship between and binding the debtor entities (including LSI) and the creditors and equity holders (including Sunset and LSI Retail IV). *See Plan*, at § 9.11 and § 11.6; *see also* 11 U.S.C. § 1141(a) (provisions of a confirmed plan bind debtor, creditors and equity security holders whether or not the creditor's or equity security holder's claim or interest is impaired and whether or not such creditor or equity security holder accepted the plan).

The Plan included its own limitations period for objecting to claims: March 3, 2015, which was 120 days from the Effective Date. No one—including LSI, Sunset and LSI Retail IV—objected to allowance of VEC's Claim No. 8-1, which was of record when the Plan and Disclosure Statement were proposed and transmitted to interested parties. While it is true, as LSI Retail IV argues in the Motion to Reopen, that the Bankruptcy Code does not include a deadline for objecting to claims allowance, that silence may be overridden by the terms of a confirmed plan:

> In this case, the plan has created a statute of limitations for objecting to claims where one did not exist under the Bankruptcy Code. Confirmation of a chapter 11 plan binds the debtor and all creditors of the debtor to the terms of the plan. An order confirming a chapter 11 plan from which there is no appeal is generally regarded as an order entitled to full faith and credit by other courts and is res judicata as to all questions pertaining to such plan which were raised or could have been raised.

*In re Bancroft Cap Co.*, 182 B.R. 538, 540 (Bankr. E.D. Ark. 1995) (internal citations omitted). Citing *Bancroft* and other cases, the court in *Matter of Bernard* was even more unequivocal on this issue:

> [W]here the Order, or the reorganization plan which it confirmed, includes a

12

> reservation by the debtor of a right to bring future claim objections, res judicata should cement terms of that reservation just as it would the rest of the Order and allow the reservation to create its own statute of limitations for future objections.  *In re Bancroft Cap Co.,* 182 B.R. 538, 538–39 (Bankr. E.D. Ark. 1995); *Holly's Inc. v. City of Kentwood (In re Holly's Inc.)*, 172 B.R. 545, 564 n. 24 (Bankr. W.D. Mich. 1994); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Inv., Inc.)*, 162 B.R. 426, 433–34 (Bankr. S.D. N.Y. 1993).  Thus, the unique terms of the plan and Order potentially may provide for future objections to claim, notwithstanding 11 U.S.C. 1327(a).

> Here, while the confirmation Order made expressed provision for post-confirmation objections, that reservation came subject to a six month time limitation.  As such, the text of that Order cannot be read to provide license for the presentment of new claim objections at a point more than two years after confirmation. *Bancroft,* 182 B.R. at 538–39.  Indeed, to the contrary, the Court finds the terms of the Order to suggest that, absent an objection within the six month period, all claims shall be deemed valid.

189 B.R. 1017, 1020 n. 3 (Bankr. N.D. Ga. 1996).  *See also In re Hovis*, 356 F.3d 820, 822-23 (7th Cir. 2004) (Easterbrook, J.) (where a debtor objected to a claim post-confirmation within the plan deadline for objections, appellate court observed that a plan may include such deadlines that, once approved, must be enforced by the bankruptcy court).

As stated above, a motion to reopen should be denied if the relief sought upon reopening cannot be granted.  *See Schicke*, 290 B.R. at 798.  Here, based upon the unambiguous terms of the Plan, proposed by LSI and CTC (through LSI Retail IV) and consented to by LSI Retail IV, any objection to the VEC claim is time-barred and therefore the relief sought by LSI Retail IV is not available.  For this reason, the Motion to Reopen should be denied.

> C.   LSI Retail IV's proposed reconsideration motion is nothing more than an impermissible collateral attack on the Plan.

Likely recognizing the final and non-appealable status of the Order of Confirmation as well as the effect of 11 U.S.C. § 1144, LSI Retail IV has couched the relief it seeks if the case is reopened as a reconsideration of the VEC claim, rather than as a claim objection in the first

13

instance.  This ruse should be rejected for at least two reasons.  First, the reconsideration provisions relied upon by LSI Retail IV—11 U.S.C. § 502(j) and Rule 3008—are inapplicable.  Second, the purported basis for the proposed objection—allegations that Mr. Coppfer, as a manager of CTC, somehow participated in the filing and allowance of a false claim—is an impermissible collateral attack on the Plan itself, not merely a claim objection.

*1.*     *11 U.S.C. § 502(j) and Rule 3008 are inapplicable.*

In the Motion to Reopen, LSI Retail IV asserts that it should be permitted to reopen the case to seek reconsideration of VEC's claim pursuant to 11 U.S.C. § 502(j) and Rule 3008, but this argument should be rejected for two reasons: first, no order ever entered allowing VEC's claim as required for reconsideration; and, second, the terms of the confirmed plan eliminated the right to seek relief under § 502(j) and Rule 3008.

a.     <u>There is no order to reconsider</u>.

First, there was never any allowance order to reconsider.  Section 502(j) provides, in pertinent part, that a "claim that has been allowed or disallowed may be reconsidered for cause." Rule 3008 provides, in pertinent part, that a "party in interest may move for reconsideration of an <u>order</u> allowing or disallowing a claim against the estate." (Emphasis added.)

LSI Retail IV cites cases that stand for the proposition that a bankruptcy case may be reopened pursuant to 11 U.S.C. § 350 to permit an interested party to seek reconsideration of a claim pursuant to § 502(j).  This is by no means a uniform interpretation of the Code.  *See, e.g. In re Brannan*, 532 B.R. 834, 838-39 (Bankr. D. Kan. 2010) ("The courts are somewhat divided on whether confirmed plans preclude revisiting the validity of liens or claims").   To be sure, there are cases holding that § 502(j) may be utilized as a basis for reopening a closed case, but LSI Retail IV's argument leaps over two critical predicate questions: first, whether there exists an <u>order</u>

14

allowing VEC's claim that could be reconsidered and, second, whether LSI Retail IV has the right,

in 2021, to seek reconsideration.  The answer to the first question is no:

> By its own terms, Rule 3008 applies after the bankruptcy court issues "an order" allowing or disallowing a claim against the estate. In the underlying bankruptcy cases, the creditors do no identify what *orders* the bankruptcy court should reconsider.  There are no such orders; rather, the claims were only deemed allowed pursuant to 11 U.S.C. § 502(a) because the debtors had not yet objected to the claims.

*In re Chapter 13 Proc. of Herrera*, 369 B.R. 395, 399 (E.D. Wis. 2007) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 7, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("Section 502(a), for example, provides that a claim is allowed unless 'a party in interest' objects.").

The *Herrera* court identified the absurdity in the procedure suggested by LSI Retail IV in

its Motion to Reopen:

> If a claim is deemed allowed upon filing and if, as the bankruptcy court held, the debtor must move for reconsideration pursuant to Rule 3008 after a claim is deemed allowed, the debtor must always object to a claim via a motion for reconsideration and may never object pursuant to Rule 3007. Surely, this cannot be what the drafters of the rule intended. Instead, a more viable construction of Rule 3008 that gives effect to both rules is that <u>Rule 3008 applies only to claims allowed by a court order, not claims deemed allowed by 11 U.S.C. § 502(a)</u>. *See Matter of Henderson,* 577 F.2d 997, 1001 (5th Cir.1978) ("[T]here cannot be a reconsideration of a claim which was allowed automatically without consideration.")

369 B.R. at 400 (emphasis added).  Rule 9024, which partially incorporates Fed. R. Civ. P. 60, and

which LSI Retail IV relies upon for reconsideration, similarly requires the existence of "an <u>order</u>

allowing or disallowing a claim"—even if the order was entered without contest—as a predicate

to seeking reconsideration.   (Emphasis added.)   Here, no order ever entered allowing or

disallowing VEC's claim.  Rather, the claim was deemed allowed pursuant to 11 U.S.C. § 502(a)

and, as set forth above, the time for filing objections pursuant to the terms of the confirmed Plan was March 3, 2015, after confirmation.

VEC acknowledges that there are cases that do not follow *Herrera* and instead conclude that deemed allowance by a confirmation order is sufficient to invoke reconsideration under § 502(j) and Rule 3008.  However, it does not appear that any of those cases addressed a plan, like the Plan here, that included a firm claim objection deadline and an objection asserted after that deadline.  For the reasons already discussed, such provisions are binding on interested parties and trying to utilize other provisions of the Bankruptcy Code and Rules to do an end run around what was negotiated and approved by the Court smacks of gamesmanship at best and bad faith at worst.

In addition, moreover, the Order of Confirmation in this case cannot be deemed an order allowing VEC's claim because the Plan provided a 120-day *after* confirmation for the filing of objections.   In other words, the Order of Confirmation cannot be a deemed allowance or disallowance because the limitations period for objections had not even run when the order was entered.

        b.       <u>The terms of the confirmed Plan eliminated the right to seek relief under § 502(j) and Rule 3008.</u>

Reaching the same result as the *Herrera* court but for a different reason, the court in *In re Bancroft Cap Co.*, 182 B.R. 538 (Bankr. E.D. Ark. 1995), concluded that § 502(j) could be abrogated by the terms of a confirmed plan:

> Section 502(j) must be read in the context of the Bankruptcy Code. Under the Code, claims can be allowed without benefit of a court order, and no period of limitations exist for filing a motion to reconsider a claim allowed by court order or by operation of law. Here, however, the Debtor's plan eliminated the Debtor's right to seek relief under 11 U.S.C. § 502(j) (1988) after the expiration of the ninety-day period of limitation. The order confirming the Debtor's plan is binding on the parties and, under the principles of res judicata, the Debtor cannot now object to Bonanno's claim.

16

*Id.* at 540.   Here, the Plan unequivocally includes a firm limitation period and therefore eliminates the right of any interested party to seek relief under § 502(j) and Rule 3008.

> 2.   *LSI Retail IV's reconsideration argument is a thinly-veiled, impermissible collateral attack on the Plan.*

11 U.S.C. § 1144 "provides a means, within a prescribed time limit, to revoke a confirmation order under limited circumstances."  *Id.*  Section 1144 provides a firm 180-day time limit for revoking confirmation orders and even then only if the orders were "procured by fraud." *See In re Crown-Globe, Inc.*, 107 B.R. 60, 62 (Bankr. E.D. Pa. 1989) (courts strictly construe the 180-day time limitation and apply it even if the fraud is discovered beyond the 180 days).

"A collateral attack brought outside Section 1144's strict time limit represents nothing more than an impermissible attempt to enlarge the time limit." *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005).  Further, "[a]n action which, *in effect,* attempts to revoke a confirmation order is also a collateral attack."  *Id.*  "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Id.* at 346.  "Collateral attacks on final judgments are generally disallowed because it is the policy of the law to give finality to the judgments of the courts."  *Id.* at 345.

Here, LSI Retail IV's reconsideration argument is an impermissible collateral attack because (a) LSI Retail IV seeks relief which the Order of Confirmation currently stands as a bar against and (b) LSI Retail IV's argument is premised on a mismanagement allegation in connection with the confirmation process itself.  With respect to the first infirmity, the relief sought is an untimely claim objection.  As set forth in detail above, the Order of Confirmation bars this relief and the invocation of § 502(j) is therefore an impermissible collateral attack.

17

With respect to the second infirmity, in paragraph 32 of the Motion to Reopen, LSI Retail IV falsely alleges that Mr. Coppfer somehow caused CTC to not object to the VEC claim which in turn caused damage to LSI Retail IV because allowance of the VEC claim meant that VEC's debt claim would be paid in full before any monies trickled down to the equity claims of LSI Retail IV and VEC.  This is not simply a challenge to the VEC claim; this is a challenge to the structure of the Plan itself, the proposed payouts to unsecured creditors and, most importantly, Mr. Fishman's management of all of these entities, including LSI Retail IV, during the bankruptcy. Even if these allegations were true, which they assuredly are not, they are exactly the sorts of allegations that are forever barred under § 1144 once six months has passed from confirmation.

The purported claim reconsideration is thus a collateral attack on the Plan itself that is barred, both because the Order of Confirmation was never appealed and by operation of § 1144.

          D.      <u>The Motion to Reopen should also be denied based upon application of the doctrines of res judicata, equitable estoppel, waiver, and laches.</u>

In addition to the foregoing arguments, the Motion to Reopen should also be denied based upon application of numerous other legal doctrines.  Each of these doctrines applies, at a fundamental level, because LSI Retail IV is not a stranger to this case, or even an entity that lacked notice or a reason to object to either confirmation or allowance of VEC's claim while the case was open.  To the contrary, LSI Retail IV (i) proposed the Plan on behalf of CTC; (ii) its 94.5% owner LSI was the co-Plan proponent; and, (iii) it was a co-owner with VEC of CTC during and after the bankruptcy cases.  If LSI Retail IV took issue with VEC's claim, it was incumbent on LSI Retail IV to do so within the time periods for objection set forth in the Plan, not six years later.

          *1.*      *Res Judicata/Finality*

The doctrine of res judicata applies in the bankruptcy context. *See Brown v. Felsen*, 442 U.S. 127, 132 (1979). A confirmation order is treated as a final judgment with res judicata effect. *See Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938). Pursuant to § 1141(a), all parties are bound by the terms of a confirmed plan. "Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). "Federal courts have consistently applied res judicata principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan or reorganization or to appeal the confirmation order." *Id.*

Res judicata applies when three conditions are satisfied: "1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." *Id.* Here, it is undisputed that all three conditions are satisfied. The Order of Confirmation was made on the merits, it is a final judgment and it was rendered by a court of competent jurisdiction. The parties are identical, or in privity. LSI Retail IV—through its manager Alan Fishman, who was also the manager of CTC and through its 94.5% owner LSI—proposed the Plan, and, as a member of Class 2.6 under the Plan, consented to the Plan terms which provided (a) that all Allowed Claims would be paid in full; (b) that the Plan terms were binding on all interested parties; and (c) established a 120-day deadline for claim objections.

Third, the request to reconsider VEC's claim is premised upon the same theory that could have been advanced within the 120-day deadline. When the Plan was proposed, LSI Retail IV knew (and disclosed) the existence of the potential remaining amount of traffic impact fees, which

19

have not changed in the intervening six years except insofar as the outstanding amount has been reduced by interim payments.  In the Disclosure Statement, the proponents acknowledged that the traffic impacts fees remained CTC's sole remaining asset after payment of secured and administrative claims.  In the Plan, the proponents agreed to pay Allowed Claims (meaning claims that were not timely objected to and disallowed) in full.  As stated, by accepting the Plan, LSI Retail IV consented to this treatment.  Critically, if the VEC claim had not been an Allowed Claim, it is likely that the traffic impact fees would have been paid to the equity holders, because other unsecured claims were minimal, withdrawn, or paid in full.  Thus, it was incumbent on LSI Retail IV to (a) not propose to pay the VEC claim in full in the Plan; (b) argue that it was impaired and therefore entitled to vote on the Plan; or, at a minimum, (c) object to VEC's claim within the 120-day period.  LSI Retail IV did none of these things.  For purposes of res judicata, the arguments that it would have had to make in opposition to VEC's claim in 2015 are the same arguments that it is making now.

Further, in *Case v. Wells Fargo Bank, N.A.*, 394 B.R. 469 (Bankr. E.D. Wis. 2008) *aff'd sub nom. Ruhl v. HSBC Mortg. Servs., Inc.*, 399 B.R. 49 (E.D. Wis. 2008), the court discussed the inherently suspect nature of a debtor seeking to do an end run around its own plan terms in the context of a res judicata analysis:

> Permitting a challenge to a plan after confirmation invites mischief. For example, a debtor in seeking to avoid a potential objection to confirmation would have the ability to put a provision into a plan to satisfy that creditor and then, following confirmation, challenge the debtor's own provision. That would not only undermine the concept of finality in bankruptcy proceedings, it would also undermine the integrity of the entire judicial process.

> What persuades this court that *res judicata* applies is <u>that the challenge</u> to interest on interest payments <u>has been brought by the debtors—the very same parties who proposed such payments in their plans</u>. In *In re Starling,* 251 B.R. 908 (Bankr. S.D. Fla. 2000), a debtor agreed to waive his right to object to a creditor's claim before

20

the plan was confirmed. Six months after plan confirmation, the debtor then objected to the claims as excessive. The bankruptcy court overruled the debtor's objection, declaring that it was made too late. The bankruptcy court stated that the confirmed plan was binding upon the debtor and creditor and that to permit such a challenge following confirmation would overlook the express language of § 1327(a) of the Bankruptcy Code. *Id.* at 910.

394 B.R. at 476 (emphasis added). These same considerations are present here. If the Court permits LSI Retail IV—some six years after CTC and LSI proposed to pay in full all claims that were allowed after the objection deadline—to effectively modify the Plan to eliminate the limitations period, it "would not only undermine the concept of finality in bankruptcy proceedings, it would also undermine the integrity of the entire judicial process." *Id.* In the United States District Court ruling that affirmed *Case*, the court described the finality issue as follows:

> [T]he principle of finality embodied in § 1327(a) and recognized in the case law protects not only opposing parties, but also the judiciary itself. Courts have their own interest in the finality of their orders and in ensuring that judicial resources are not spent on issues that were not raised at the appropriate time. *See, e.g., Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559, 2569, 171 L.Ed.2d 399 (2008) (noting that the legal system, and not just the parties, have an interest in finality). It would be a waste of judicial resources to force the bankruptcy court to reopen these seven bankruptcies for the sole purpose of addressing objections that the debtors had every opportunity to raise before or shortly after confirmation.

*Ruhl v. HSBC Mortg. Servs., Inc.*, 399 B.R. 49, 59 (E.D. Wis. 2008).

All three conditions for application of the doctrine of res judicata are met and the Motion to Reopen should therefore be denied.

### 2.    *Equitable Estoppel*

"The doctrine of equitable estoppel allows 'a person's act, conduct or silence when it is his duty to speak,' to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action." *Varat*, 81 F.3d at 1317 (quoting Black's Law Dictionary). "The doctrine applies in the bankruptcy context when four criteria are met: 1) the party estopped

knew the relevant facts; 2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; 3) the party acting was ignorant of the true facts; and, 4) the party acting relied on the conduct to its injury." *Id.*

Here, all four criteria are met.  First, there can be no doubt that LSI Retail IV knew the relevant facts: LSI Retail IV knew that (a) VEC asserted its claim in the amount of $2,563,868.06 was allowable; (b) the Plan provided for full payment of allowed unsecured claims in the class that VEC's claim was classified in; and (c) the claim would be allowed if no timely objection was filed. *See Varat*, 81 F.3d at 1318.  Second, VEC had a right to assume that it could rely on the conduct of LSI Retail IV, LSI, Sunset and Alan Fishman.  These parties <u>proposed</u> the treatment and none asserted a timely objection.  *See id.*  Third, VEC was ignorant in 2015 that LSI Retail IV might reverse its position at some point in time after confirmation.  Fourth, VEC relied on the language in the Plan treating its claim as an Allowed Claim entitled to full payment unless objected to within 120-days of confirmation in deciding not to contest confirmation.  Each criteria is met and therefore LSI Retail IV is equitably estopped from advancing the contrary position set forth in the Motion to Reopen and proposed reconsideration motion.

### 3.    Waiver

The doctrine of waiver applies when a party voluntarily or intentionally relinquishes a known claim or right.  *Varat*, 81 F.3d at 1317.  In *Varat*, the Fourth Circuit concluded that a creditor that had a right to object to a claim prior to confirmation but elected not to waived the right to do so post-confirmation.  *See id.* at 1317-18.  The plan in *Varat* did not include a claim objection deadline and the court nevertheless found the doctrine of waiver applicable.  Here, application of the doctrine is even more appropriate because not only was there an affirmative limitations period in the Plan for claim objections that LSI Retail IV elected not to avail itself of, but LSI Retail IV

and the related entities are the ones that actually asked to have this limitation period included.  This is a textbook example of a knowing waiver that bars any attempted objection to VEC's claim.

Waiver also applies here based upon the 2016 settlement with Mr. Fishman.  LSI Retail IV argues in the Motion to Reopen that its mismanagement by Mr. Fishman in the bankruptcy case led to the allowance of the VEC claim and that it has been injured by this mismanagement.  That mismanagement claim, however, was settled and waived in the 2016 settlement.

4.      *Laches*

"Generally, courts will apply the doctrine of laches when the following two elements are met: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"  *In re Parker*, 264 B.R. 685, 692–93 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002) (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961).   Lack of diligence here should be uncontested for the reasons already discussed.  The receiver's recent appearance on the scene has no bearing on LSI Retail IV's intimate, first-hand knowledge of VEC and its claim during the bankruptcy case.

With respect to the second factor, there is no doubt that VEC would be prejudiced if the claim objection were permitted to go forward.  There was no language in the Plan to suggest that VEC's claim would be contested.  To the contrary, VEC's claim was placed in a class the debtors proposed to pay in full.  There would have been no reason for VEC to object to the Plan unless it knew that LSI Retail IV would be contesting its filed claim.  The doctrine of laches should therefore bar any objection at this late date.

## Conclusion

The Dick family tried to enmesh this Court in their bitter family feud seven years ago and the Court not only rebuffed those efforts but gave them a road map on what to do: the beneficiaries

23

"sole remedy is to sue Fishman in state court. If they or others are ultimately appointed as trustees for the Trusts, then they will be able to pursue legal rights as equity holders in LSI, and perhaps, indirectly, in CTC." *See* Docket No. 280, at 4. The Dicks did not avail themselves of those rights while the case was pending. Mr. Fishman was not removed from his control positions prior to confirmation and the Dicks cannot be heard to complain about that fact seven years later. Under Mr. Fishman's control and with the Dicks' full knowledge, LSI Retail IV proposed and supported a plan that ultimately resulted in the allowance of VEC's claim. To the extent the Dicks had claims for mismanagement against Mr. Fishman, those claims were settled and waived five years ago. For all of the reasons set forth above[5], LSI Retail IV is bound by those actions, both on the facts and by applicable law, and "cause" for reopening the case is non-existent. The Motion to Reopen should be summarily denied.

WHEREFORE, VEC respectfully requests entry of an order denying the Motion to Reopen and such other relief as deemed appropriate.

DATED this 29th day of September, 2021.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ David V. Wadsworth*
David V. Wadsworth, #32066
2580 Main Street, Suite 200
Littleton, CO 80120
Phone: (303) 296-1999/Fax: (303) 296-7600
dwadsworth@wgwc-law.com
*Attorneys for Village at Elk Crossing, LLC*

---

[5] In the interest of (relative) brevity, VEC has not included discussion of other arguments against the Motion to Reopen that are likely determinative, such as acquiescence and ratification, the doctrine of in pari delicto, and application of state statutes of limitations—all of which have long passed—to the relief LSI Retail IV seeks.

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2021, I caused the foregoing **VILLAGE AT ELK CROSSING, LLC'S RESPONSE AND OBJECTION TO MOTION TO REOPEN CASE** to be served via United States Mail or CM/ECF as applicable to the following:

Brian T. Ray
bray@hatchlawyers.com

Conifer Town Center, LLC
8361 N Rampart Range Rd Ste 208
Littleton, CO 80125

Kristin M. Bronson
kbronson@lrrc.com

David Hyams
G23667@notify.cincompass.com

Paul G. Urtz
paulurtz@millerurtz.com

Matthew M. Wolf
mwolf@allen-vellone.com

Timothy G. Atkinson
TAtkinson@irelandstapleton.com

Eric Butler
ebutler@jeffco.us

Antonio L. Converse
anthony@converselawgroup.com

Joel W. Kiesey
jkiesey@sennlaw.com

Kimberley Haines Tyson
ktyson@irelandstapleton.com

Meredith P. Van Horn
mvanhorn@adcogov.org

Jeffrey Weinman
jweinmantrustee@outlook.com

Mark F. Bell
mbell@hallestill.com

Lee M. Kutner
lmk@kutnerlaw.com

F. Brittin Clayton III
bclayton@rcalaw.com

Caroline C. Fuller
cfuller@fwlaw.com

US Trustee
USTPRegion19.DV.ECF@usdoj.gov

Patrick D. Vellone
pvellone@allen-vellone.com

*/s/ Dorelia E. Tackett*
For Wadsworth Garber Warner Conrardy, P.C.

25